UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                            Case No. 15-cr-20718

v.

                                            HON. MARK A. GOLDSMITH

LEE EARNEST WESLEY,

      Defendant.

_____/

## OPINION AND ORDER
## DENYING DEFENDANT'S MOTIONS FOR A NEW TRIAL (Dkt. 87) AND TO STRIKE THE GOVERNMENT'S RESPONSE (Dkt. 91)

Following a seven-day jury trial, Defendant Lee Earnest Wesley was found guilty on November 4, 2016 of one count of conspiracy to possess with the intent to distribute controlled substances, one count of possession with the intent to distribute heroin, and one count of possession with the intent to distribute methamphetamine. 11/4/2016 Jury Verdict (Dkt. 70).

This matter is before the Court on Wesley's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 (Dkt. 87), in which he claims his Sixth Amendment right to an impartial jury was violated. Specifically, Wesley contends that, "as a result of the jury selection system used" in this district, the composition of the 42-person jury venire, which included only two African Americans, did not constitute a fair cross section of the community due to the underrepresentation of African Americans. Def. Mot. for New Trial at 4.[1] Wesley also appears

---

[1] Wesley also claims that the jury venire had an underrepresentation of residents of Detroit, which he contends is a distinctive group under the Constitution. However, residents of a geographic area are not a distinct, cognizable group for purposes of Sixth Amendment analysis. United States v. Fieger, No. 07-20414, 2008 WL 1902054, at *3 (E.D. Mich. Apr. 29, 2008) ("Although the Sixth Circuit has not spoken on this issue, a district court within this Circuit thoroughly surveyed the relevant case law and found that it uniformly holds 'that residents of a geographic area are not a distinct, cognizable group based on their place of residence alone.'" (quoting United States v. Traficant, 209 F. Supp. 2d 764, 780 (N.D. Ohio 2002)). Having been provided no authority to the contrary, the Court denies Wesley's motion to the extent it is based

to argue that his rights under the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861 et seq., were violated because of this underrepresentation.[2]  The Government filed a response to Wesley's motion (Dkt. 90), which Wesley seeks to strike as untimely (Dkt. 91).  For the reasons stated below, the Court denies both motions.[3]

## I.  STANDARD OF DECISION

Federal Rule of Criminal Procedure 33 governs a criminal defendant's motion for a new trial, which permits a district court to "vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "The rule does not define interest of justice and the courts have had little success in trying to generalize its meaning."  United States v. Munoz, 605 F.3d 359, 373 (6th Cir. 2010).  Nevertheless, "it is widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred," including "reversible error or violation of the defendant's substantial rights."  Id. at 373-374.

## II.  ANALYSIS

### A. Timeliness of Wesley's Motion for a New Trial Under Federal Rule of Criminal Procedure 33

The Government contends that Wesley's motion is untimely under Rule 33, see Pl. Resp. at 5 (Dkt. 90), which requires that the motion must be filed within 14 days of the verdict, see Fed. R. Crim. P. 33(b)(2), unless the motion is based on "newly discovered evidence," in which

---

on the underrepresentation of a geographic group of individuals.  Therefore, the remainder of this opinion focuses only on Wesley's claim concerning the underrepresentation of African Americans on his jury venire.

[2] In his motion for a new trial, Wesley states that, although he has a "statutory right to have the jury selected according to the procedures set forth in 28 U.S.C. §§ 1861-1878," he does not know whether these procedures were followed in this case "[w]ithout extensive release of data," but that the disparity between the venire's composition and the population figures "gives cause to believe that the statutes were not followed."  See Def. Mot. for New Trial at 5.  This fleeting reference and unsubstantiated conclusion is the only portion of the motion addressing any purported violation of Wesley's rights under the Act.

[3] Because oral argument will not aid the decisional process, Wesley's motions will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2).

case the motion must be filed within three years of the verdict, Fed. R. Crim. P. 33(b)(1). In the event a party has failed to act within a specified time period, Federal Rule of Criminal Procedure 45 provides that the Court may, for good cause, grant a party's motion to extend the time to file "if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B).

In this case, the jury returned a verdict of guilty on November 4, 2016. Wesley does not claim that he has discovered any new evidence warranting a new trial. Rather, Wesley acknowledges that the grounds for his motion were known to him during jury selection — namely, Wesley's challenge to the district court's jury-selection system based on the racial composition of the jury venire. See Def. Mot. for New Trial at 1 ("During jury selection the defense objected that the jury venire did not constitute a fair-cross section of the population in the Eastern District of Michigan, Southern Division."); see also 10/27/2016 Trial Tr. at 4 (Dkt. 88) ("I wish to object to the jury venire because of two reasons. One, it does not reflect the racial makeup of the Eastern District of Michigan and two, there is not one person from Detroit. . . . [I]t's our position that we need a jury venire that more correctly and accurately reflects the racial and geographic nature of the residents of the Eastern District of Michigan."). Thus, under Rule 33(b)(2), Wesley had until November 18, 2016 to file his motion for a new trial. He did not do so. Rather, Wesley waited until January 10, 2017 to file his motion for a new trial — over two months after the verdict was rendered.

Wesley also did not file a motion for an extension of time to file under Rule 45. Wesley's numerous briefs filed in relation to his motion for a new trial do not even hint at any sort of excusable neglect. Without any explanation for his neglect or why it should be excused in this case, the Court denies Wesley's motion for a new trial because it was not filed within 14 days after the verdict, and Wesley has not attempted to establish the requisite good cause for the Court to grant an extension of time.

Wesley's reliance on United States v. Arny, 831 F.3d 725 (6th Cir. 2016), for the proposition that the Court has the discretion to decide the motion despite its untimeliness, see Def. Reply at 10 (Dkt. 92), does not alter the Court's conclusion. As Wesley correctly points out, the district court in Arny granted the defendant's motion for a new trial based on his trial counsel's constitutionally ineffective assistance. That motion was filed approximately three months after the verdict, but before sentencing, after the defendant had secured new counsel. Arny, 831 F.3d at 728. However, the Sixth Circuit noted that the lower court granted the defendant leave to file the late motion under Rule 45(b), having found the requisite "excusable neglect for the delay in that Arny was still represented by his trial counsel during the 14-day period," and the Government did not appeal that finding. Id. at 730 n.3. As noted above, Wesley did not attempt to take advantage of Rule 45, and, even excusing Wesley's failure to invoke Rule 45 by name, there is nothing in the current record that could lead this Court to conclude that Wesley's untimeliness was the result of excusable neglect.

Wesley also cites United States v. Myint, 455 F. App'x 596 (6th Cir. 2012) (per curiam), as an example of a district court denying a motion for a new trial based on its untimeliness and the Sixth Circuit deciding the merits of the issues on appeal. See Def. Reply at 11. In Myint, the Sixth Circuit noted that the lower court denied the motion because it was filed after the 14-day period of Rule 33. 455 F. App'x at 601 n.7. The Sixth Circuit further noted that the defendant did "not seriously argue that any exception to the fourteen-day period applies." Id. (citing Fed. R. Crim. P. 45(b)(1); United States v. Owen, 559 F.3d 82, 83 (2d Cir. 2009)). There is nothing in Myint to suggest that the lower court erred in denying the defendant's motion for its untimeliness.[4]

---

[4] Wesley also contends that the Government waived its timeliness argument by failing to timely file its response. See Def. Reply at 11-12. As explained infra, in connection with Wesley's motion to strike the Government's response, the three-day delay is excused because of a death in the family of the attorney for the Government.

For these reasons alone, Wesley's motion for a new trial is denied. Nevertheless, even considering the merits of his motion, the Court concludes that it should be denied.

### B. Timeliness of Wesley's Challenge to the Jury Selection Process or Composition to the Jury Venire Under Federal Rule of Criminal Procedure 12

According to the Government, constitutional challenges to a jury's composition under the Sixth Amendment are governed by Federal Rule of Criminal Procedure 12, which requires that "challenges to a petit jury must be raised before the start of trial." Pl. Resp. at 3 (citing Davis v. United States, 411 U.S. 233, 236-237 (1973); United States v. Boulding, 412 F. App'x 798, 802 (6th Cir. 2011)). The Government states further that a motion like this one "must be raised before the deadline for pretrial motions." Pl. Resp. at 3. Because Wesley did not file a motion addressing the "issue of the jury composition or the jury selection process for the petit jury" by the August 1, 2016 deadline for pretrial motions, the Government argues that the present motion is untimely. Id. Although the Court may consider an untimely motion under Rule 12(c)(3) for good cause, the Government argues that Wesley did not attempt to establish good cause for not raising this claim before trial. Id. (citing Bates v. United States, 473 F. App'x 446, 448 (6th Cir. 2012); Boulding, 412 F. App'x at 802).

Wesley contends that his motion does not raise any of the claims covered under Rule 12(b)(3). Def. Reply at 2. Even if Rule 12 did require challenges to a jury venire to be made before trial, Wesley argues that there is good cause under Rule 12(c)(3) for the Court to still consider his motion, because counsel did not "have any idea that the administrative authorities of the Eastern District of Michigan have utterly failed in their responsibility to use fair procedures to ensure that jury venires are fairly selected" until counsel was "provided a list of the prospective jurors" and the "jury venire was called to the courtroom." Id. at 3. Wesley further argues that the basis for his motion was not readily available before trial to satisfy Rule 12's pretrial filing requirement. Id. at 4. Nevertheless, Wesley claims that his motion was made

5

"pretrial" when his counsel objected to the jury venire before the commencement of voir dire. Id. at 5.

The Court sides with Wesley on this issue. Pursuant to Rule 12, an objection involving "an error in the grand-jury proceeding" must be raised before trial "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A)(v). The Sixth Circuit has extended Rule 12's pretrial requirement to cover objections to a jury selection process or the petit jury venire. Boulding, 412 F. App'x at 802; United States v. Ovalle, 136 F.3d 1092, 1107 (6th Cir. 1998).

Although the Court agrees with the Government that Wesley was required to raise his objection to this district's jury selection process before the start of trial, the Court disagrees that such a motion was required to be filed by the August 1, 2016 deadline for pretrial motions. Wesley can fairly claim that he did not fully appreciate the alleged constitutional issue until trial. He still had to satisfy the timeliness standard of Rule 12(b), which required raising the claimed error before voir dire. United States v. Ferguson, 863 F. Supp. 2d 661, 668 (E.D. Mich. 2012). Here, Wesley's counsel objected to the composition of the 42-person jury venire before the start of voir dire. As such, the objection was timely raised under Rule 12.

There is another route to the same result. Although an untimely objection is considered waived, Rule 12 does permit a Court to grant relief from that waiver for good cause. Fed. R. Crim. P. 12(c)(3). Good cause, in turn, may be found where "the factual or legal basis for a claim was not reasonably available to counsel." Murray v. Carrier, 477 U.S. 478, 488 (2012). Wesley's counsel stated that the factual or legal basis for their challenge to the jury selection process was unknown to them until they were "provided a list of the prospective jurors" and the "jury venire was called to the courtroom." Def. Reply at 3. Assuming that Wesley was required to raise his objection by the pretrial-motion deadline, counsel's assertion is sufficient to establish good cause to grant Wesley relief from any purported waiver. See Ferguson, 863 F. Supp. 2d at

6

668 ("At oral argument, the Court understood the defendants to say that they could not have known the racial composition of the jury venire until the jurors entered the courtroom. True enough.").

The Court finds that Wesley's objection was timely under Rule 12.

### C. Timeliness of Wesley's Claim Under the Jury Selection and Service Act

The Jury Selection and Service Act guarantees that a criminal defendant "shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district of division wherein the court convenes." 28 U.S.C. § 1861. If a defendant believes that there has been a "substantial failure to comply with the provisions of [the Act] in selecting the grand or petit jury," the defendant's "exclusive means" for challenging any purported nonconformity with the Act is to file a motion "to dismiss the indictment or stay the proceedings against him." 28 U.S.C. §§ 1867(a), (e); see also United States v. Johnson, 40 F. App'x 93, 96 (6th Cir. 2002) (stating that § 1867 is the exclusive means by which a defendant may raise a challenge for the substantial failure to comply with the statutory requirements governing selection of a jury). If a motion is filed under § 1867(a), and that motion contains a "sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions" of the Act, the defendant is entitled to support his motion by presenting the "testimony of the jury commission or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence." 28 U.S.C. 1867(d).

A motion under § 1867(a) must be filed "before voir dire begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor." 28 U.S.C. § 1867 (a). The timeliness requirement for a motion based on a violation of the Act "was provided to prevent dilatoriness and to ensure the rapid disposition of claims, particularly those that are spurious." Ovalle, 136 F.3d at 1098. This requirement is

"strictly construed, and failure to comply precisely with its terms forecloses a challenge under the Act." Id.

Recognizing that Wesley has asserted a violation of the Jury Selection and Service Act, the Government argues that Wesley did not follow the Act's strict procedures for challenging the jury venire selection process. Pl. Resp. at 4. Although Wesley objected to the composition of the jury venire before voir dire began, Wesley did not request a stay of the proceedings, which the Government contends is required under the Act. Id. The Government also states that Wesley did not file a motion containing a sworn statement of facts. Id. (citing 28 U.S.C. § 1867(d)). According to the Government, Wesley's attempt to follow the intermediary steps under the Act in his motion for a new trial is untimely. Id.

Wesley argues that his counsel's objection before the beginning of voir dire was timely, see Def. Reply at 5-7, and that the Act does not require a criminal defendant to request a stay of the proceedings, id. at 8. Wesley then states that his counsel remembers "request[ing] that the court halt the proceedings until such time as the jury venire issue could be resolved, and to hold a hearing," but his "counsel has no transcript of the proceeding." Id. at 8. Regarding the Act's requirement that a motion filed under § 1867(a) contain a sworn statement of facts, Wesley states that this requirement is not necessary to make a motion but, rather, is only required "for a defendant to be 'entitled' to present certain things in support of the motion." Id. at 9. Wesley also asserts that his counsel's objection on the record would constitute a sworn statement of facts. Id. Nevertheless, if there was any procedural default, Wesley's counsel admits to rendering ineffective assistance of counsel, which Wesley claims excuses the default. Id.

The Court agrees with the Government that Wesley's claim under the Act is time-barred. Wesley's counsel raised his objection concerning the racial composition of the jury venire before the commencement of voir dire, but he neither sought to dismiss the indictment nor moved for a stay of the proceedings on the basis of a violation of the Act. Although his counsel claims that

8

he recalls "request[ing] that the court halt the proceedings until such time as the jury venire issue could be resolved, and to hold a hearing," Def. Reply at 8, Wesley has provided nothing to support the assertion. Further, his counsel's assertion that he "has no transcript of the proceeding," id., is a bit perplexing, as the portion of the trial transcript in which Wesley's objection to the jury venire was made appears on this Court's docket on January 26, 2017 (Dkt. 88), which was well before Wesley's reply brief was filed. Having reviewed the transcript, the Court finds that Wesley's counsel did not move to dismiss or request a stay of the proceedings. Any attempt to do so in his motion for a new trial is, therefore, time-barred. However, Wesley's failure to comply with the Act's required procedures does not prevent Wesley from pursuing a claim under the Sixth Amendment. See United States v. Williams, 264 F.3d 561, 567 n.3 (5th Cir. 2001).

Therefore, the portion of Wesley's motion for a new trial based on a violation of the Act is denied.

**D. Merits of Wesley's Challenges to This District's Jury Selection Plan**

Under the Sixth Amendment, a criminal defendant has the right "to a petit jury selected from a fair cross section of the community." Duren v. Missouri, 439 U.S. 357, 359 (1979); see also Taylor v. Louisiana, 419 U.S. 522, 530 (1975). In Duren, the Supreme Court articulated the three-part test for determining the constitutionality of jury selection:

> [T]o establish a prima facie violation of the fair cross-section requirement, the defendant must show (1) that the group allege to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

439 U.S. 357, 365 (1979); see also United States v. Suggs, 531 F. App'x 609, 618-619 (6th Cir. 2013). This standard applies regardless of whether the claim is brought under the Sixth Amendment or the Jury Service and Selection Act. Ovalle, 136 F.3d at 1099.

In his motion, Wesley asserts that the "system is rigged" because "[t]here is something in the way that prospective jurors are selected and called for service that grossly underrepresents African Americans." Def. Mot. at 7.[5] In his opinion, the jury selection plan in this district did not result in a "jury drawn from a fair cross-section of the community." Id. at 15. Recognizing that a constitutional challenge to this district's jury selection plan cannot be premised on the composition of a single jury venire, Wesley seeks the "release of information about [ ] other jury panels" to show that the underrepresentation of African Americans has been persistent. Id. at 18. Because he has "little information about why the present jury selection process results in these gross disparities," Wesley further requests "all information relevant to that determination, over a period of time." Id.; see also id. at 21 ("We urge this Court to order [the] release of information from the office that conducts jury venire selection, and the committee that oversees jury venire selection.").

The Court first notes a problem with Wesley's requests for jury-related information; they are simply too vague. Unlike previous cases where a defendant has sought specific juror-related materials, see, e.g., United States v. Oldham, 995 F. Supp. 2d 789, 794-795 (E.D. Mich. 2014); United States v. Kilpatrick, No. 10-CR-20403, 2012 WL 3133939, at *2 (E.D. Mich. Aug. 1, 2012), Wesley does not attempt to clarify any of the information he seeks in his motion. To grant such a "blanket request for juror information" would not be proper. See United States v. Luna-Santillanes, No. 11-CR-20492, 2012 WL 3464764, at *5 (E.D. Mich. Aug. 14, 2012). Although Wesley provided in his unsolicited sur-reply the types of questions he proposes to ask

---

[5] Of the 42 persons in the venire, only two were African Americans. Neither was seated, as each side exercised a peremptory challenge to exclude them from the jury.

the jury commissioner if an evidentiary hearing is held, see Def. Sur-Reply at 3-4 (Dkt. 95), Wesley still does not provide any elucidation of the requested jury-related information.

Wesley's request for information is defective for the additional reason that it fails to explain why more information is required beyond what is already publicly available to him. As the Government correctly points out, there is a substantial amount of information about jury selection in this district that is available to the public. See Pl. Resp. at 10. For instance, there is a public notice that explains the district's electronic summoning and qualification process to select jurors for both the master and qualified jury wheels. See Public Notice Regarding the Selection of Names for Jury Service (Apr. 22, 2013).[6] There are also several administrative orders that describe the district's jury selection plan in detail, see, e.g., Admin. Order 13-AO-016 (Mar. 18, 2013),[7] as well as the creation of the master jury wheel for each of the Court's five jury divisions, see Admin. Order 13-AO-011 (Feb. 19, 2013),[8] and for the Detroit master jury wheel in particular, see Admin. Order 13-AO-005 (Jan. 23, 2013).[9] Wesley does not explain why this information is insufficient for purposes of his motion.

Regardless of his vague and unnecessary requests for jury-related information, Wesley's challenge to this district's jury selection plan simply lacks any merit. This plan has already survived numerous constitutional and statutory challenges. E.g., United States v. Bates, No. 05-81027, 2009 WL 5033928 (E.D. Mich. Dec. 15, 2009), aff'd sub nom. Bates v. United States, 473 F. App'x 446 (6th Cir. 2012); United States v. Riddle, 691 F. Supp. 2d 737, 742-743 (E.D. Mich. 2010) (denying the defendant's motion for a new trial because the constitutionality of the

---

[6] Available at http://www.mied.uscourts.gov/PDFFIles/publicNoticeRandomSelectionOfNamesForJuryService.pdf.

[7] Available at http://www.mied.uscourts.gov/PDFFIles/13AO016.pdf

[8] Available at http://www.mied.uscourts.gov/PDFFIles/13AO011.pdf

[9] Available at http://www.mied.uscourts.gov/PDFFIles/13AO005.pdf

jury selection plan was already decided); see also United States v. Ferguson, 863 F. Supp. 2d 661 (E.D. Mich. 2012). Wesley does not address any of this history.[10]

Furthermore, this district has taken extensive measures to ensure that juries represent a fair cross section of the community, which clearly belies any intent to exclude minorities. Recognizing that, in past years, the non-response rate to jury summonses is higher in Wayne County (with its large concentration of African Americans) than in other counties from which Detroit juries are drawn, this district created an Ad Hoc Jury Committee in March 2010 with the primary goal of "seek[ing] and implement[ing] solutions to increase minority representation in the Court's jury pools." Exec. Summ. of Jury Consultant Final Report of Dec. 20, 2010 (E.D. Mich. Ad Hoc Jury Comm. June 1, 2012).[11] This committee, consisting of a number of judges of this district, conducted an extensive study of the Court's jury selection process with the assistance of a jury consultant from the National Center for State Courts. Id.; Oldham, 995 F. Supp. 2d at 798 n.10. The jury consultant concluded that there was no history of purposeful exclusion, but did recommend measures to increase minority representation, most of which the Court has adopted:

> [The jury consultant] concluded that the Court's juror selection process does not systematically exclude racial minorities. Rather, the data showed that the high non-response rate in Wayne County is a major contributor to the underrepresentation of African Americans in federal jury pools. The actions taken by the Court are designed to improve the accuracy of addresses and the delivery of mailings to occupied dwellings, increase the response rate, and educate the community about the importance of jury service.

---

[10] Wesley's failure to appreciate this history is akin to his failure to understand how jury selection works under the Court's jury selection plan. For example, he finds fault with the fact that juries in Detroit do not draw from all of the 13 counties of the Southern Division of the Eastern District. See Def. Reply at 17-18. He is, apparently, unaware that the district is split into five divisions for purposes of jury selection, a system under which juries in the Detroit division are drawn from nine neighboring counties. See Riddle at 739. Wesley offers no authority for why this is wrongful, or how it supports his contention of purposeful exclusion of African Americans.

[11] Available at https://www.mied.uscourts.gov/PDFFIles/juryconsultrpt.pdf.

Oldham, 995 F. Supp. 2d at 798 n.10. Again, this history undermines Wesley's claim of purposeful exclusion of African Americans.

For all these reasons, the Court denies Wesley's motion for a new trial insofar as he claims that the jury selection plan in this district violated his rights under either the Sixth Amendment or the Jury Selection and Service Act.

### E. Wesley's Motion to Strike the Government's Response

Wesley correctly points out that the Government's response to his motion for a new trial was filed on February 10, 2017, three days after it was due. Def. Mot. to Strike at 1-2 (Dkt. 91). Wesley argues that the Government's failure to timely file its response "constitutes procedural default." Id. at 2 (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). Wesley proceeds to state that, although procedural default may be excused if it was the result of ineffective assistance of counsel, the Government has no constitutional right to the effective assistance of counsel. Id. at 3 (citing Martinez v. Ryan, 566 U.S. 1, 7-9 (2012)). According to Wesley, the Court should strike the response, treat Wesley's motion for a new trial as being unopposed, and grant the relief in sought in that motion. Id. at 3-4. This Court disagrees.

As noted above, under Rule 45, the Court may extend the time to file if, after the time to act has passed, the party's failure to timely act was the result of excusable neglect. Fed. R. Crim. P. 54(b)(1)(B). Counsel for the Government informed the Court of a death in his family, which satisfies the excusable neglect for the Government's response brief being filed three days after the deadline to do so. Comm. for Idaho's High Desert v. Yost, 92 F.3d 814, 824 (9th Cir. 1996) (death of a member in an attorney's family is an example of excusable neglect). Moreover, the only prejudice facing Wesley is that the Government correctly shows that many of Wesley's arguments lack any legal basis. Even if the Court were to grant Wesley's motion and disregard the arguments raised in the Government's response brief, the conclusions this Court has reached in this opinion would not be altered.

## III. CONCLUSION

For the reasons stated above, the Court denies Wesley's motions for a new trial (Dkt. 87) and to strike the Government's response brief (Dkt. 91).

SO ORDERED.

Dated: June 15, 2017  
   Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 15, 2017.

s/Karri Sandusky  
Case Manager