UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 15-cr-20718

    HON. MARK A. GOLDSMITH

LEE EARNEST WESLEY,

    Defendant.

_____/

## OPINION & ORDER
## DENYING DEFENDANT'S AMENDED SECOND MOTION FOR A NEW TRIAL (Dkt. 103)

Following a seven-day jury trial, Defendant Lee Earnest Wesley was found guilty on November 4, 2016 of one count of conspiracy to possess with the intent to distribute controlled substances, 21 U.S.C. §§ 841(b)(1)(A) and 846; one count of possession with the intent to distribute heroin, 21 U.S.C. § 841(b)(1)(A); and one count of possession with the intent to distribute methamphetamine, 21 U.S.C. § 841(b)(1)(A). 11/4/2016 Jury Verdict (Dkt. 70).

This matter is before the Court on Wesley's amended second motion for a new trial pursuant to Federal Rule of Criminal Procedure 33 (Dkt. 103), in which he argues that his rights under the Sixth Amendment and the Jury Selection and Service Act of 1968 ("JSSA"), 28 U.S.C. § 1861 et seq., were violated because this district's jury selection plan's alleged systematic exclusion of African Americans resulted in the underrepresentation of African Americans in the jury venire for this case.[1]

---

[1] Wesley initially filed his second motion for a new trial on August 11, 2017 (Dkt. 102). He then filed an amended motion on August 14, 2017, adding a request for a stay of the proceedings. Whether the motion was filed on August 11 or August 14 has no impact on the Court's decision.

1

Although this issue was already raised and rejected in Wesley's first motion for a new trial, Wesley retained new counsel, David Steingold, who filed the present motion on August 14, 2017, raising the issue again. The Government filed a response (Dkt. 108) and Wesley filed a reply (Dkt. 112); oral argument was held on January 9, 2018. For the reasons stated below, the Court denies the motion.

## I. STANDARD OF DECISION

Federal Rule of Criminal Procedure 33 governs a criminal defendant's motion for a new trial and permits a district court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The rule does not define interest of justice and the courts have had little success in trying to generalize its meaning." United States v. Munoz, 605 F.3d 359, 373 (6th Cir. 2010) (internal quotation marks and alteration omitted). Nevertheless, "it is widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred," including "reversible error or violation of the defendant's substantial rights." Id. at 373-374.

## II. DISCUSSION

### A. Jurisdiction

As an initial matter, the Court must address jurisdiction. The Government argues that Wesley's filing of a notice of appeal divested the Court of jurisdiction to decide this motion, relying on United States v. Williams, Nos. 05-3293, 05-4160, 2006 WL 3203748 at *6 (6th Cir. Nov. 6, 2006) ("It is indeed settled law that filing a notice of appeal with the district court divests the district court of jurisdiction to act in a case, except on remedial matters unrelated to the merits of the appeal.") (internal quotation marks omitted). See Gov't Resp. at 2, PageID.551 (Dkt. 108). Federal Rule of Criminal Procedure 33(b)(1) provides that if "an appeal is pending, the court may

not grant a motion for a new trial until the appellate court remands the case." Wesley responds that under the Federal Rules of Appellate Procedure, the notice of appeal has not yet become effective because it post-dates the filing of his motion for new trial, and thus does not deprive this Court of jurisdiction. See Def. Reply at 3, PageID.563 (Dkt. 112).

Wesley is correct. Federal Rule of Appellate Procedure 4 governs appeals as of right, with Rule 4(b) covering appeals in criminal cases. Rule 4(b)(1)(A) dictates that, to be timely, a defendant's notice of appeal must be filed within fourteen days of the entry of either the judgment or the order being appealed. However, Rule 4(b)(3) clarifies Rule 4(b)(1) and governs circumstances in which a motion for new trial has been filed. See Fed. R. App. P. 4(b)(3)(A)(ii). In those cases, a notice of appeal filed after the court announces a sentence, but before it disposes of the motion, becomes effective only upon the later of the entry of the order disposing of the motion or the entry of the judgment. See Fed. R. App. P. 4(b)(3)(B); see also United States v. Young, No. 03-20400B, 2005 WL 3879034 (W.D. Tenn. Nov. 7, 2005) (concluding that district court had jurisdiction to consider motion for new trial because notice of appeal, filed before disposition of new trial motion, was not yet effective).

Here, Wesley's amended second motion for a new trial was filed on August 14, 2017 (Dkt. 103). He was sentenced on August 16, 2017 and judgment was entered the next day (Dkt. 104); the notice of appeal was filed on August 25, 2017 (Dkt. 105). Because the Court announced its sentence before disposing of Defendant's current motion, the notice of appeal does not become effective until the entry of an order disposing of the motion. Accordingly, the Court has jurisdiction over this matter.

**B. Timeliness**

Rule 33 requires that a motion for a new trial be filed within fourteen days of the verdict, see Fed. R. Crim. P. 33(b)(2), unless the motion is based on "newly discovered evidence," in which case the motion must be filed within three years of the verdict, Fed. R. Crim. P. 33(b)(1). In the event a party has failed to act within a specified time period, Federal Rule of Criminal Procedure 45 provides that the Court may, for good cause, extend the time to file "if the party failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B).

The Court denied Wesley's first motion for a new trial, which was not based on newly discovered evidence, because it was filed over two months after the verdict was rendered. United States v. Wesley, No. 15-cr-20718, 2017 WL 2590487, at *2 (E.D. Mich. June 15, 2017). The Court further noted that Wesley did not file a motion for an extension of time to file under Rule 45, nor did he make any argument to establish excusable neglect for his delay in filing the motion. Id. Nevertheless, the Court addressed the merits of Wesley's motion and concluded that the interests of justice did not warrant a new trial.

After his motion was filed, but before the Court issued its decision on June 15, 2017, Wesley retained Steingold, who filed his appearance on April 12, 2017 (Dkt. 94). Steingold filed Wesley's amended second motion for a new trial on August 14, 2017 — almost two months after the Court denied the first motion for a new trial, and four months after Steingold was retained. It was also filed two days before Wesley's sentencing date of August 16, 2017.

Recognizing that the amended motion clearly was not filed within the fourteen-day period after the verdict was rendered, Wesley argued in his opening brief that the Court should exercise its discretion under Rule 45 and consider his second motion because its untimeliness was purportedly the result of excusable neglect, based on the ineffectiveness of his two trial attorneys, one of whom (James Lawrence) had filed the untimely first motion for a new trial. See Def. Mot.

4

at 2, PageID.513; Def. Br. at 10, PageID.521. In his reply, Wesley raised a new argument to address untimeliness: his second motion was based on newly discovered evidence, thus allowing him to file his motion up to three years after verdict. See Def. Reply at 2, PageID.562.

As explained below, the "excusable neglect" and "newly discovered evidence" arguments are both flawed.

**1. Excusable Neglect**

In support of his excusable neglect contention, Wesley argues that his trial attorneys were ineffective because they failed to: (i) "abide by the procedural requirements of both the JSSA and the Federal Rules of Criminal Procedure and allow[ed] Mr. Wesley's claims to be procedurally defaulted," and (ii) "properly request the discovery necessary to support the challenge to the JSSA or the Sixth Amendment." Def. Mot. at 2, PageID.513; see also Def. Br. at 11, PageID.522 ("Unsurprisingly, trial counsel did not merely render procedurally ineffective assistance of counsel, but ineffective assistance of counsel in substantively raising the fair cross-section claim. Trial counsel failed to properly identify the relevant community from which the venire panel was drawn.").[2]

Although not addressed by Wesley in his motion nor by the Government in opposition, the multi-factor analysis from Pioneer Investment Services Co. v. Brunswick Associates, 507 U.S. 380, 395 (1993), is what guides a court in making its equitable determination whether to permit a late filing of a motion for a new trial based on a party's assertion of excusable neglect. Munoz, 605 F.3d at 369. The non-exhaustive list of factors includes: (i) the danger of prejudice to the

---

[2] Wesley provides no meaningful argument beyond these conclusory and generalized assertions to explain why his trial counsel was constitutionally ineffective under the standard announced in Strickland v. Washington, 466 U.S. 668 (1984). In fact, Wesley does not even cite Strickland in his amended motion for a new trial.

5

nonmoving party; (ii) the length of the delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was within the reasonable control of the movant; and (iv) whether the late-filing party acted in good faith. See Munoz, 605 F.3d at 368 & n.5 (applying excusable-neglect standard from Pioneer with respect to Rule 45, and addressing how some panels applied a five-factor test by separating "the reason for the delay" and "whether the delay was within the reasonable control of the moving party," but concluding that the four-factor division is more faithful to the language in Pioneer). These four factors "do not carry equal weight," as the "excuse given for the late filing must have the greatest import." Id. at 372.

Regarding the first factor, the Court finds that it weighs in favor of Wesley, because the Government does not argue that it would be prejudiced in any way if the Court were to permit the late filing and consider the merits of the amended second motion for a new trial.

Regarding the second factor, the length of the delay was significant. The amended second motion was filed nine months after the verdict and four months after Steingold entered the case. Delays of this length have been found inexcusable. See, e.g., United States v. Elenniss, 729 F. App'x 422 (6th Cir. 2018) (affirming a finding of no excusable neglect where two months passed between retention of new attorney and filing of motion for new trial, despite claim of ineffectiveness of prior counsel). Further, its impact on the Court was significant, because the second motion covered similar ground as the first motion, while also raising new issues; it would have been far more efficient for the Court to have considered all arguments pertaining to the jury summoning system at one time, rather than engage in duplicative and piecemeal research and drafting efforts. Id. at 427 (noting how delay prejudiced district court by causing it to "misallocate[e] its resources").

Of greater significance is the reason for the delay; as to that, Wesley offers no cogent argument. Assuming that Wesley's trial attorneys were somehow ineffective in failing to timely file the first motion for a new trial, or were ineffective for not raising better arguments in support of that motion, Wesley provides no justification for Steingold having waited almost <u>two months after</u> the Court denied the first motion to file the amended second motion for a new trial – which was <u>four months after</u> Steingold had entered the case. While delay by the successor counsel may be understandable when he will accuse former counsel of being ineffective, <u>see</u> <u>Munoz</u>, 605 F.3d at 372 (noting "sensitive posture" and "unique difficulties" when successor counsel must take over case from allegedly ineffective predecessor counsel), here, Steingold did not entirely replace both trial attorneys. Rather, he joined with Lawrence as co-counsel and filed a supplemental reply brief with Lawrence in support of the initial motion (Dkt. 95). In any case, Steingold makes no argument that he delayed in filing his motion for a new trial because he was confronting a "sensitive posture" or "unique difficulties."

Regarding whether the delay can be deemed to be within Wesley's control, the Court receives guidance from a number of cases. The prevailing test in the Sixth Circuit is that "everyday mistakes" made by counsel will be deemed to be within a defendant's control, while acts that extend "into the realm of serious misconduct" or are egregious acts or omissions will be found to be outside of a defendant's control. <u>See</u> <u>Munoz</u>, 605 F.3d at 370-371 (quoting <u>Downs v. McNeil</u>, 520 F.3d 1311, 1319-1321 (11th Cir. 2008)). The Sixth Circuit has clarified that delay attributable to a former ineffective counsel is outside the defendant's control, while delay that ensues following retention of new counsel is within the defendant's control. <u>See</u> <u>Elenniss</u>, 729 F. App'x at 426 ("Elenniss should not be punished for his [former] lawyer's failure to file a motion rooted in his own ineffectiveness. That delay—the first two months—was at least somewhat outside of his

7

control. The subsequent two-month delay, though, was not.") (footnote omitted). Because the second motion was not filed until four months after Wesley retained new counsel – a circumstance deemed to be within Wesley's control – this factor weighs heavily against him.

The last factor – good faith – also weighs against Wesley. The current motion was filed two days <u>before</u> Wesley's sentencing date. Wesley's sentencing had already been adjourned from February 14, 2017 to July 19, 2017, to allow the Court to rule on the first motion for a new trial. The Court issued its decision on the first motion on June 15, 2017. One month later, on July 14, 2017, the sentencing was adjourned yet again, this time to August 16, 2017, based on a stipulation between the parties for Wesley to file a second motion for new trial. <u>See</u> 7/14/2017 Stip. & Order (Dkt. 99). The amended second motion for a new trial was then filed <u>one month after</u> that stipulation and order, which also requests a stay of the proceedings. <u>See</u> Def. Mot. at 3. Given the repeated defense requests to adjourn Wesley's sentencing date, and the timing of Wesley's amended second motion for a new trial and its belated request for a stay, the Court finds that Wesley has not acted in good faith. Rather, it is apparent to the Court that Wesley's conduct was for one reason only — to continually delay his sentencing date.

Balancing the <u>Pioneer</u> factors – and noting that all factors but one undermine Wesley's position – the Court concludes that Wesley has failed to establish excusable neglect for the delay in filing his amended second motion for a new trial.[3]

---

[3] Wesley's invocation of <u>United States v. Arny</u>, 831 F.3d 725 (6th Cir. 2016), <u>see</u> Def. Br. at 10, PageID.521, is misplaced. In <u>Arny</u>, the defendant secured new counsel approximately three months after his verdict, but before he was sentenced. <u>See</u> <u>Arny</u>, 831 F.3d at 728. The new attorney filed a motion for a new trial under Rule 33 more than five months after the jury returned its verdict, arguing that the defendant's trial counsel provided constitutionally ineffective assistance. <u>Id.</u> Because the defendant was still represented by his trial counsel during the fourteen-day period, the district court concluded that there was excusable neglect for the delay and granted the defendant leave to file the late motion under Rule 45(b). <u>Id.</u> at 730 n.3. However, as the

### 2. New Evidence

Wesley attempts to overcome the untimeliness of his amended second motion by claiming that it is based on newly discovered evidence, which would expand the window to file from fourteen days after verdict to three years. This was raised for the first time in the reply brief and could be rejected on that basis alone. See Sodexo Mgmt., Inc. v. Detroit Pub. Schools, 200 F. Supp. 3d 679, 693 n.11 (E.D. Mich. 2016) ("[B]ecause the issue was not raised in DPS's opening brief, it is not properly raised for the first time in its reply brief.").

But even considering it on its merits, the argument fails. The test for determining whether evidence can be deemed "newly discovered" for purposes of allowing a new trial is as follows: "a defendant must normally show that the evidence (1) was discovered only after trial, (2) could not have been discovered earlier with due diligence, (3) is material and not merely cumulative or impeaching, and (4) would likely produce an acquittal if the case were retried." United States v. Dubrule, 822 F.3d 866, 885 (6th Cir. 2016) (internal quotations marks omitted).

Here, Wesley did not exercise due diligence in the discovery of this supposed evidence. He claims that the evidence consists of: (i) the 2013 Master Jury Wheel and 2015 Master Jury Wheel having been emptied; (ii) two new Jury Wheels having been filled; and (iii) the records related to the 2013 and 2015 Wheels are supposedly not being made available to the public. Def. Reply at 2-3, PageID.562-563. This information was supposedly learned by counsel's intern in conversations with Theresa Hryshko and Arthur McCoy, respectively the Jury Administrator and

---

Government did not appeal the excusable neglect finding, the Sixth Circuit did not rule on that issue. Id. Thus the Sixth Circuit's decision provides no guidance on excusable neglect.

Assistant Jury Administrator for the U.S. District Court in Detroit, see 1/9/2018 Tr. at 12, PageID.1911 (Dkt. 128).[4]

Steingold claims that these conversations were held in late July 2017, but he offered no explanation why these conversations did not occur and could not have occurred earlier. Rather, it appears that Wesley's new counsel delayed until after the first motion was denied and sentencing was fast approaching before pursuing an alternate theory; this is not due diligence. See United States v. Bravata, 305 F.R.D. 97, 100 (E.D. Mich. 2015) (finding that defendant did not act with diligence when, among other reasons, he argued that he was only alerted for need for new evidence after an initial motion for a new trial was denied). Wesley's new counsel was retained before briefing was completed on the first motion; that is when any alternative avenues for a new trial should have been explored – not some four months later.

Additionally, the evidence is not material. Wesley appears to argue that the evidence could show a systematic long-term underrepresentation of African Americans due to their being excused from jury service at a disproportionate rate or their failing to respond to jury summoning at a disproportionate rate. Even if the facts showed these speculations to be true, this would be insufficient to grant a new trial, as his theories under both the Sixth Amendment and Fifth Amendment are without legal merit.[5]

---

[4] These factual assertions are not set out in any affidavit or declaration; they are made in unsworn briefs, which is insufficient. See McIness v. City of Detroit, No. 16-13918, 2018 WL 3390436 (E.D. Mich. July 12, 2018) ("To be treated as evidence, testimonial statements [ ] must be set forth in an affidavit that is properly notarized or in which statements are declared to be true under penalty of perjury as 28 U.S.C. § 1746 allows.") (quoting Gonzales v. Brevard, 531 F. Supp. 2d 1019, 1022 (W.D. Wis. 2008)) (alteration in original). Even if the statements were properly supported, the Court's analysis below would be unchanged.

[5] Wesley also invokes his statutory right under the JSSA to a jury drawn from a fair-cross section of the community, see Def. Mot. at 9, PageID.520, but there is no elaboration on the substance of this contention distinct from his analysis of his constitutional claims. Because the claim is made

10

His Sixth Amendment theory is that the jury venire did not represent a fair cross-section of the community, for which he must establish the following to make out a prima facie violation:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Duren v. Missouri, 439 U.S. 357, 364 (1979).

Even assuming that Wesley can prevail on the first two elements, he cannot satisfy the third. Wesley's argument on systematic exclusion focuses on two supposed flaws: (i) discretionary excusing of jurors for hardship that supposedly disproportionately excuses African Americans; and (ii) the one-step process under which potential jurors are summoned and directed to complete a qualifications questionnaire by way of a single mailing, in contrast to a two-step process, under which there is an initial mailing of a questionnaire, followed by a second mailing of a summons to those who qualify.

But courts have consistently upheld systems in which racially-neutral criteria have been used to create the venire, even where a minority population has been substantially underrepresented as a result. See, e.g., Truesdale v. Moore, 142 F.3d 749, 755 (4th Cir. 1998)

---

in conclusory fashion without a separate analysis, the claim may be deemed abandoned. See United States v. Burley, 241 F. App'x 290, 298 (6th Cir. 2007) ("Issues such as this that are presented in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotation marks omitted). Further, Wesley makes no argument why his JSSA claim is not time-barred, as the Court determined in its opinion on his first motion for a new trial. See United States v. Wesley, No. 15-20718, 2017 WL 2590487 at *4-*5 (E.D. Mich. June 15, 2017). In any case, the Court's analysis in the instant opinion rejecting his constitutional claims applies equally to the substance of his JSSA claim. See United States v. Ovalle, 136 F.3d 1092, 1099 (6th Cir. 1998) ("Typically, challenges brought under the JSSA are reviewed under the same standard as a Sixth Amendment claim of denial of a jury representing a fair cross section of the community, which requires a showing of underrepresentation of a distinct group.").

(upholding use of voter registration lists to create jury pool, while rejecting Truesdale's argument that the system resulted in a "substantial underrepresentation" of African Americans); Schanbarger v. Macy, 77 F.3d 1424, 1424 (2d Cir. 1996) ("[W]e hold that, absent positive evidence that some groups have been hindered in attempting to register to vote, a jury venire drawn from voter registration lists violates neither the Sixth Amendment's fair cross-section requirement nor the Fifth Amendment's guarantee of Equal Protection."); United States v. Barry, 71 F.3d 1269, 1273 (7th Cir. 1995) (upholding system that excludes those charged with a felony, a race-neutral factor, from the jury-selection pool).

Furthermore, any underrepresentation attributable to requests to be excused or one-step qualification and summoning of jurors is the product of individual choices – which insulates such features of a jury system from constitutional attack. See United States v. Orange, 447 F.3d 792, 800 (10th Cir. 2006) (dismissing claim based on likelihood of minority populations to return questionnaires or register to vote because "[d]iscrepancies resulting from the private choices of potential jurors" do not satisfy the Duren "systematic exclusion" standard); Bates v. United States, 473 F. App'x 446, 451 (6th Cir. 2012) ("Non-responses, however, are not a problem 'inherent' to the jury selection procedures, but are the result of individual choice.").

Wesley's challenge faces other insurmountable hurdles. Allowances for individuals to be excused from jury service for hardships have been a staple feature of the jury system since its inception – a feature designed to show compassion to those who would otherwise be greatly inconvenienced and one with no historical linkage to discriminatory animus; Wesley does not propose how a court could constitutionally remedy a system designed to alleviate the hardship of jury service even if it turned out that African Americans happened to be excused in disproportionate numbers.

As for the one-step process, Wesley faces the challenge of showing that it amounts to a systematic exclusion of African Americans, even though numerous entities in the legal system with no history of racial animus expressly approved this feature including: Congress (which expressly allowed for a one-step process, see 28 U.S.C. § 1878); the judges of this district (when they adopted the one-step process in the jury plan, see E.D. Mich. Administrative Order, No. 13-AO-016, available at http://www.mied.uscourts.gov/PDFFIles/13Ao016.pdf); and the judges of the Sixth Circuit (when they approved the jury plan, see id.). These difficulties highlight the vacuousness of Wesley's Sixth Amendment argument.[6]

Wesley's second argument, based on the Fifth Amendment's equal protection guarantee, fails as well. To establish a prima facie case of discrimination, Wesley must show "(1) that the defendant's race was substantially underrepresented on the particular venire from which the

---

[6] Wesley purports to find some support for his attack on the one-step process in a study performed by the National Center for the Study of State Court, supposedly showing higher rates of undeliverable mailings, excusal rates, non-response rates, and failures to appear for one-step courts as compared to two-step courts, in urban areas with populations over 500,000. See Def. Mot. at 19, PageID.530, citing GREGORY E. MIZE ET AL, THE STATE-OF-THE-STATES SURVEY OF JURY IMPROVEMENT EFFORTS: A COMPENDIUM REPORT (2007). Importantly, the comparison has nothing to do with race. In any case, Wesley's comparison, based on Table 16 of the report, is faulty. The report states that the data for two-step courts pertain to those summoned in the second step. See MIZE ET AL at 21, n.39 ("The Local Court Survey only inquired about jury yield with respect to summoning . . .") (citing COURTOOLS MEASURE 8: EFFECTIVE USE OF JURORS (defining, for example, "undeliverables" as "[t]he number of summonses sent out that were returned by the post office as undeliverable") (available at http://www.courtools.org/~/media/Microsites/Files/CourTools/courtools_Trial_measure8_Effective_Use_Of_Jurors.ashx)). Thus, the "undeliverable" questionnaires from the first step of the two-step process are not taken into account, unlike the case for data from one-step courts, in which undeliverable summonses are taken into account. This would explain why Table 16 shows a higher rate for "underliverable" (and other variables) for one-step courts; the data for them focus on the initial effort to contact potential jurors, rather than efforts following the winnowing process utilized by two-step courts. Wesley's "apples and oranges" comparison, therefore, does not show that the one-step process is likely to lead to under-summoning of jurors, and certainly not under-summoning of African American jurors.

defendant's jury was selected AND that the venire was selected under a practice providing an opportunity for discrimination; or (2) that there has been systematic, long-term underrepresentation of defendant's race on jury venires." United States v. Allen, 160 F.3d 1096, 1105 (6th Cir. 1998) (capitalization in original). As explained, Wesley cannot show that there has been a systematic underrepresentation of African Americans on jury venires, as the factors used by the courthouse's jury department are racially-neutral and not susceptible to abuse. See Truesdale v. Moore, 142 F.3d 749, 755 (4th Cir. 1998) ("[T]o prevail on this claim he must show some evidence that the selection procedure 'is susceptible of abuse or is not racially neutral.'") (quoting Castaneda v. Partida, 430 U.S. 482, 494 (1977)). Accordingly, Wesley's Fifth Amendment argument is without merit, and any evidence supposedly supporting it, therefore, would not be material.[7]

Having failed to establish the factors relative to due diligence and materiality, Wesley cannot establish timeliness of his motion is based on a theory of newly discovered evidence. And because he also cannot establish excusable neglect, that route to timeliness is also blocked. Wesley's amended motion thus fails for lack of timeliness.[8]

---

[7] Wesley points to a supposed third flaw in the jury selection process: the placement of jurors excused during voir dire from one trial back into the venire for possible selection in another trial violates the fair cross-section requirement. See Def. Mot. at 23-24. But this argument has been rejected by the Sixth Circuit. See United States v. Allen, 160 F.3d 1096, 1105 (6th Cir. 1998). There, the court held that recycling jurors did not violate the JSSA, as the statute, 28 U.S.C. § 1866(c), expressly allowed this. Further, there was no violation of the Sixth Amendment, because there was no showing that any "underrepresentation [was] inherent in the jury selection process used." Allen, 160 F.3d at 1104. Nor was there any violation of the Fifth Amendment made out because "[e]ven assuming that Appellant had adequately established underrepresentation, he has not shown that the practice of adding stricken jurors to complete venires provides a significant opportunity to discriminate." Id. at 1105. The same analysis applies here.

[8] Because Wesley's motion is untimely, there is no basis for a stay or for the extensive discovery that he also seeks in his motion. As to the latter point, the Court does not understand Wesley to be seeking information except to support his untimely motion for a new trial. See Def. Mot. at 15

14

## III. CONCLUSION

For all of the above reasons, Wesley's amended second motion for a new trial (Dkt. 103) is denied.[9]

SO ORDERED.

Dated: August 24, 2018　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 24, 2018.

　　　　　　　　　　　　　　　　　　　　　s/Karri Sandusky
　　　　　　　　　　　　　　　　　　　　　Case Manager

---

("The discovery requested in this motion is . . . necessary to Mr. Wesley's Sixth Amendment claim."). To the extent he wishes to enforce alleged rights under the JSSA for the information for any other purpose, he is free to file a civil action if the Clerk's Office does not honor an appropriate request for information under the JSSA – a request that Wesley's motion does not assert that he has made.

[9] Because Wesley's amended motion superseded his original motion, the original motion (Dkt. 102) is denied as moot.