UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

LEE EARNEST WESLEY,

    Defendant.
_____/

Case No. 15-20718

HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING DEFENDANT LEE EARNEST WESLEY'S MOTION FOR
COMPASSIONATE RELEASE (Dkt. 138)**

This matter is before the Court on Defendant Lee Earnest Wesley's motion for compassionate release (Dkt. 138). Wesley was sentenced on August 17, 2017, to 16 years' imprisonment after a jury found him guilty of conspiring to distribute and possessing with intent to distribute 3.7 kilograms of heroin and 987 grams of methamphetamine, in violation of 21 U.S.C. § 841(b)(1)(A). See Judgment (Dkt. 104). Wesley now seeks compassionate release and requests that the Court reduce the remaining years of his prison sentence to supervised release or home confinement because of the dangers posed by COVID-19. For the reasons that follow, Wesley's motion is denied.

## I.  BACKGROUND

Wesley is currently serving his sentence at the La Tuna Federal Correctional Institution ("FCI La Tuna") in Anthony, Texas. The Bureau of Prisons' ("BOP") website reports that at FCI La Tuna there are no inmates and only one staff member with active cases of COVID-19.[1] The

---

[1] See https://www.bop.gov/coronavirus/ (last visited on July 21, 2020).

BOP has implemented a COVID-19 action plan to minimize the risk of COVID-19 transmission into and within its facilities, which includes quarantining inmates, taking social distancing measures, and providing personal protective equipment to staff and inmates.  Resp. at 6-9 (Dkt. 141).  Wesley made a request to the warden for compassionate release on April 1, 2020, but his request was denied on May 5, 2020.  Mot. at 2; Resp. at 10.  Wesley timely filed the present motion.

Wesley is seventy-three years old and has several medical issues, including neutropenia, hypertension, and obesity.  Mot. at 5; see also Wesley Medical Records, Ex. B to Resp., at PageID.2385 (Dkt. 142-1).  Neutropenia occurs when one has a lower than normal level of neutrophils, a type of white blood cell.[2]  With respect to obesity, Wesley has consistently had a Body Mass Index ("BMI") greater than 30.  Resp. at 14; see also Wesley Medical Records at PageID.2385   Because the warden denied Wesley's request for home confinement, Wesley now seeks a reduction in sentence from this Court under the First Step Act.

## II.     LEGAL STANDARD

"The First Step Act of 2019, Pub. L. 115-391, 132 Stat. 5194, modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3582," such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences. United States v. Sapp, No. 14-cr-20520, 2020 WL 515935, at *1 (E.D. Mich. Jan. 31, 2020).  Under 18 U.S.C. § 3582(c)(1)(A)(i), a court may reduce a sentence if, after considering the sentencing factors set forth in § 3553(a), the court finds that "extraordinary and compelling reasons warrant

---

[2]  See  https://www.mayoclinic.org/symptoms/neutropenia/basics/definition/sym-20050854  (last visited on July 15, 2020).

such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

In the commentary to U.S.S.G. § 1B1.13, the Sentencing Commission has enumerated several extraordinary and compelling reasons justifying a reduction of sentence, including the "Medical Condition of the Defendant," "Age of the Defendant," and "Family Circumstances." U.S.S.G. 1B1.13 cmt. n.1(A)-(C). Some examples of compelling reasons are medical conditions "with an end of life trajectory," a defendant's serious physical deterioration related to the aging process, and death or incapacitation of a caregiver of a defendant's minor child or children. Id. The Guidelines also contemplate "Other Reasons" where the defendant has "extraordinary and compelling reasons other than, or in combination with" the other enumerated reasons. U.S.S.G. 1B1.13 cmt. n.1(D).

### III. ANALYSIS

#### A. Extraordinary and Compelling Reasons

Wesley argues that his age and medical conditions make him particularly vulnerable to the COVID-19 pandemic, and, therefore, he seeks release to home confinement. Mot. at 5-9. The Government argues that Wesley's medical conditions and the threat of the COVID-19 pandemic generally are not the kind of extraordinary and compelling reasons justifying release. This is a close call.

The Centers for Disease Control and Prevention ("CDC") has identified categories of people who are at an increased risk for severe illness from COVID-19, which includes older adults, individuals who have a BMI greater than 30, immunocompromised individuals, and individuals who have pulmonary hypertension. Wesley falls into two of these categories.

3

The risk for severe illness from COVID-19 increases as people age. The CDC notes that eight out of ten COVID-19 deaths have been adults age 65 and older.[3] The CDC recommends that older adults should limit their interactions with other people as much as possible, which is a difficult proposition for incarcerated individuals. Although the BOP has put social distancing measures in place, the physical constraints of a low security facility, such as La Tuna FCI, make strict social distancing compliance difficult. See Mot. at 7. Wesley's age places him at greater risk for a severe case of COVID-19.

The CDC has also identified individuals who have a BMI greater than 30 as having an increased risk of developing severe illness from COVID-19.[4] At the time the parties submitted their briefing, the CDC drew the line at a BMI greater than 40. However, the CDC revised its assessment on June 25, 2020, to better reflect new and evolving information. Based on the CDC's new assessment, Wesley falls into the category of individuals who may suffer severe illness from COVID-19 due to a current BMI of approximately 35. See Resp. at 14.

Immunocompromised individuals may also have an increased risk for severe illness from COVID-19. A weakened immune system may be caused by many conditions, such as organ transplants, HIV with a low CD4 count, or prolonged use of corticosteroids.[5] Wesley has been

---

[3] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited on July 15, 2020) (The CDC updated its categories on June 25, 2020. Although the CDC no longer draws a bright line for increased risk at age 65, it remains a good benchmark due to the increased mortality rate for those who are over 65).

[4] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity. (last visited on July 15, 2020).

[5] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-

diagnosed with neutropenia, a condition characterized by having too few neutrophils (the white blood cells that serve as the body's main defense against bacterial and fungal infections).[6] Severity of neutropenia is measured by the total white blood cell count times the percent of neutrophils and bands. The normal lower limit of this measure is 1500/mcl (1.5 K/ul), although the lower limit in African Americans may be somewhat lower at 1200/mcl. Wesley, an African American, has been diagnosed with "Benign Ethnic Neutropenia," Wesley Medical Records at PageID.2185, and has had fluctuating neutrophil levels ranging from 1008/mcl to 1400/mcl, see id. at PageID.2125, 2140, 2174, 2269, 2417, 2414, 2417. The Government notes that individuals with neutrophil levels from 1000/mcl to 1500/mcl are considered to have mild neutropenia, whereas individuals with less than 500/mcl are considered to have severe neutropenia and are at an increased risk of serious infection. Resp. at 17-18. Wesley does not dispute this assertion. Wesley's mild neutropenia does not appear to make him more susceptible to the more severe symptoms of COVID-19.

Finally, the CDC has said that individuals with pulmonary hypertension, a form of hypertension that affects the arteries in the lungs, are at a greater risk of suffering severe illness from COVID-19.[7] The CDC notes that high blood pressure, the type of hypertension for which Wesley has been diagnosed, may be a risk factor. Wesley has had high blood pressure for approximately ten years, the BOP monitors his blood pressure regularly, and he has been

---

ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#immunocompromised-state. (last visited on July 15, 2020).

[6] See https://www.merckmanuals.com/professional/hematology-and-oncology/leukopenias/neutropenia. (last visited on July 15, 2020).

[7] See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#serious-heart-conditions. (last visited on July 15, 2020).

prescribed medication to keep the condition under control. See Wesley Medical Records at PageID.2111. Wesley has not been diagnosed with pulmonary hypertension, and there is no indication that Wesley's high blood pressure is not being controlled by medication. Therefore, Wesley's high blood pressure does not necessarily put him at a greater risk of severe illness from COVID-19.

Wesley has an elevated risk of developing the more severe symptoms of COVID-19. It is a close call whether that generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is akin to the type of "extraordinary and compelling reasons" justifying compassionate release identified by the Sentencing Commission. Wesley has not contracted the virus, and there have been no reported cases of inmates contracting the virus at La Tuna FCI. However, Wesley notes that other courts in this district have granted motions for compassionate release under similar circumstances to his case. For example, in United States v. Amarrah, the court granted the defendant's motion for compassionate release in light of his Type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma, even though there had been no reported cases of COVID-19 among inmates at his facility. 2020 WL 2220008, *1-3 (E.D. Mich. May 7, 2020). The court explained that "[z]ero confirmed cases is not the same as zero COVID-19 cases." Id. at *6 (emphasis in original). The court nonetheless acknowledged that there is conflicting persuasive authority in this district on this matter. See id. at *5 (noting that some courts have found that, for high risk individuals, communal prison conditions warrant release, while other courts have not) (citing cases). The Amarrah court reasoned that the conflicting authority reflected the "highly individualized inquiry posed" by compassionate release cases. Id.

Relying on Amarrah, Wesley argues that the La Tuna FCI "no confirmed cases" of COVID-19 statistic is not indicative of the actual presence of the virus, because inmates are only being tested when they exhibit symptoms. Mot. at 5. He represents that as of April 30, 2020, "over 70% of inmates in BOP custody have tested positive for the virus." Id.[8] Presumably, based on the article that he cited, he meant to represent that 70% of inmates who have been tested have tested positive for COVID-19. But as Wesley notes, inmate testing, at least in the early stages of the pandemic, was limited to those who were exhibiting symptoms. That statistic is now less than 30% of inmates who have been tested.[9]

In another recent case, this Court has found that suspicion that the cases of COVID-19 within La Tuna FCI are being underreported due to lack of testing, is speculation and is not enough to warrant release. See United States v. Whitford, Case No. 13-20510, 5/21/20 Op. & Order Denying Motion for Compassionate Release (Dkt. 42) at 5. However, the Whitford defendant, at twenty-nine years old, is far less vulnerable to COVID-19 than Wesley. Therefore, the speculation that the COVID-19 cases are being underreported at the facility has less force. Wesley's concerns with under reporting were validated recently when mass testing at another federal correctional institution in Texas revealed that that more than half of the 1,800 inmates in the facility had contracted COVID-19. This was significantly more than the 61 cases reported up to that point.[10]

---

[8] (citing Michael Balsamo, Over 70% of Tested Inmates in Federal Prisons Have COVID-19, Official Figures Show, TIME (April 30, 2020) https://time.com/5829722/covid19-federal-prisons-testing (last visited on July 16, 2020)).

[9] See https://www.bop.gov/coronavirus/ (last visited on July 16, 2020).

[10]   See   https://www.dallasnews.com/news/public-health/2020/07/14/as-coronavirus-spreads-through-seagoville-prison-inmates-and-family-fear-a-waiting-game-to-get-sick/ (last visited on 7/21/2020).

Wesley is arguably eligible for compassionate release due to his age, medical conditions, the physical limitations of his facility (which make social distancing measures difficult), and the potential for under reported COVID-19 cases. However, while Wesley's release may be consistent with the Sentencing Guidelines policies, before releasing an individual, the Court must also consider the sentencing factors set for in 18 U.S.C. § 3553(a). The § 3553(a) factors do not weigh in Wesley's favor.

### B. 18 U.S.C. § 3553(a) Factors

The § 3553(a) factors include the nature and circumstances of a defendant's offenses and the history and characteristics of the defendant, the seriousness of the offenses, and the need to protect the public from further crimes by the defendant. Wesley is a career criminal with a wide variety of offenses stretching back to 1970. The Government notes that Wesley has had fifteen felony convictions, including armed robbery, four charges of distributing hard narcotics, bank fraud, and weapon charges. Resp. at 23. Wesley is currently serving a sentence for his role in a large-scale narcotic trafficking operation that spanned approximately eight years. Wesley argues that his risk of recidivism is low, noting that he has not had any misconduct issues while at La Tuna FCI. But his criminal history suggests otherwise. Wesley was in his late 60s at the time of his arrest for his current offenses. One hope in criminal cases is that a defendant will reflect on missteps that occurred in their youth and make a course correction as they gain more experience and wisdom. That does not appear to have been Wesley's trajectory. Therefore, Wesley's ability to stay out of trouble while incarcerated does not weigh heavily in light of his lengthy and substantial criminal history. The § 3553(a) factors do not favor release.

Even if the Court were to find that extraordinary and compelling reasons exist to reduce Wesley's sentence, in considering the § 3553(a) factors, the Court finds that Wesley is not entitled to compassionate release.

## IV. CONCLUSION

For the reasons stated above, Wesley's motion for compassionate release (Dkt. 138) is denied.

SO ORDERED.

Dated: July 22, 2020　　　　　　　　　　　　s/Mark A. Goldsmith
　　Detroit, Michigan　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge